**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Valerie Kinman, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-01154 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Kroger Co., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      The Kroger Co. ("defendant") manufactures, distributes, markets, labels and sells gouda cheese purporting to have been smoked under its Private Selection brand ("Product").




2. Smoking is a processing method to preserve or improve the flavor of food by exposing it to smoke, usually from burning wood.

3. The drying action of the smoke and the different phenol compounds helps to preserve protein-rich foods such as meat, cheese, almonds, and fish.

4. While the popularity of smoking decreased in the mid-20[th] century due to the introduction of "convenient" chemical preservatives, the last two decades have seen a resurgence in smoked foods, as consumers embrace foods made without advanced chemistry and synthetic ingredients.

5. Federal and state law requires that a product's front label disclose the source of any characterizing flavor. 21 C.F.R. § 101.22(i).[1]

6. "The rule [21 C.F.R. § 101.22(i)] is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."[2]

7. Whether a food is flavored by "smoke flavor" or from being smoked is information consumers rely on when making quick purchasing decisions at the grocery store. 21 C.F.R. § 101.22(i).

8. Consumers prefer foods that are flavored from their characterizing food ingredient or a natural production process – being smoked – instead of having added flavor.

9. An increasing number of consumers avoid highly processed foods with added flavors for reasons including nutrition, health and the avoidance of additives and highly processed

---

[1] Illinois law incorporates the federal requirements for food labeling.
[2] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.

ingredients.

10. Consumers avoid products with smoke flavor added because it contains numerous additives and has been associated with detrimental health effects.[3]

11. The FDA has warned companies that fail to accurately inform consumers of foods which are not smoked but only have added smoke flavor:

> If these smoke ingredients [natural smoke flavor] are added flavors, they should be declared in accordance with 21 CFR 101.22 [on the front of the label]; however, if these ingredients describe the smoking process, then they must not be listed as ingredients in the ingredient statement.[4]

12. Defendant's Product is labeled as "Smoked Gouda" and described as having a "distinctive, smoky flavor" which gives consumers the impression its smoked flavor is from being smoked.

13. Smoked gouda cheese that gets its smoked taste from being smoked is not a rare or pricy delicacy that would make a reasonable consumer "double check" the veracity of the front label claim on the ingredient list.

---

[3] Faizah Ahmed, Smoke-Flavored Foods May Be Toxic, Food Safety News, Feb. 16, 2010.
By on February 16, 2010
[4] FDA Warning Letter, Smoked Seafood, Inc. dba Little Mermaid Smokehouse, MARCS-CMS 515739 — JUNE 27, 2017.

14.    However, the Product is misrepresented as "Smoked Gouda" because the ingredient list reveals it contains "Smoke Flavor," which is "smoke condensed into a liquid form" instead of from being smoked.[5]

> **INGREDIENTS:    INGREDIENTS:**    CULTURED PASTEURIZED MILK, SALT, ENZYMES, SMOKE FLAVOR, COLOR ADDED.

15.    Consumers are misled because the front label statement of "distinctive, smoky flavor" does not say anything about the *source* of the smoky flavor, as required by law. 21 U.S.C. § 343(i); 21 C.F.R. § 101.22(i).

16.    Even if consumers viewed the ingredient list, they would have no reason to know that listing "Smoke Flavor" on the ingredient list forecloses the possibility the Product was subject to at least some smoking.

17.    However, the Product has not undergone any smoking and all the smoked taste is from added smoke flavor.

18.    The 400 flavor compounds which contribute to a "smoked taste" include pyrazines, aliphatic, aromatic hydrocarbons, alcohols, organic acids, esters, furans, phenols, carbonyl and noncarbonyl compounds, and various oxygen- and nitrogen-containing heterocyclic compounds.

19.    Added smoke flavor is unable to impart the same, real smoked taste of real smoking.

20.    First, the Product's added smoke flavor fails to duplicate the smoked taste from smoking, based on laboratory analysis revealing the absence of phenolic compounds in threshold amounts – 2,3-Butanedione, 2,3-Pentanedione, 3-Butanoic acid, 3-Methylbutanoic acid, 4-Ethylguaiacol, 4-Propylguaiacol and/or 4-Vinylguaiacol.

---

[5] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, Jun 15, 2016.

21. Second, the smoke generation process dramatically influences the wood-smoke chemical composition, generating compounds that are not capable of being included in a "natural smoke flavor," like trans-isceugenol and 4-methylsyringol.

22. When foods like gouda cheese are exposed to volatiles and particulate matter found in smoke, they undergo chemical reactions which form new flavor compounds.

23. Third, certain compounds only serve as intermediates in the formation of more stable forms of compounds which are essential to the aroma of smoke.

24. Fourth, in most systems involving only smoke generation instead of smoking food, there is only a focus on volatile compounds which are believed to have distinctive odor properties at low concentrations.

25. This overlooks that nonvolatile compounds may also make significant contributions to smoke flavor.

26. Reasonable consumers must and do rely on defendant to honestly disclose the source of the Product's flavor.

27. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

28. Defendant sold more of the Product and at a higher price than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

29. Had plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

30. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $3.99 for containers of 8 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold

for absent the misleading representations and omissions.

## Jurisdiction and Venue

31.    Jurisdiction is proper pursuant to the Class Action Fairness Act of 2005 ("CAFA") as the amount in controversy is at least $5 million and there is minimal diversity. 28 U.S.C. § 1332(d)(2).

32.    Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

33.    Plaintiff Valerie Kinman is a citizen of Illinois.

34.    Defendant The Kroger Co. is a Ohio corporation with a principal place of business in Cincinnati, Hamilton County, Ohio.

35.    Diversity exists because plaintiff Valerie Kinman and defendant are citizens of different states.

36.    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here, as Plaintiff Valerie Kinman made the purchase in this district.

## Parties

37.    Plaintiff Valerie Kinman is a citizen of Ottawa, La Salle County, Illinois.

38.    Defendant The Kroger Co. is a Ohio corporation with a principal place of business in Cincinnati, Ohio, Hamilton County.

39.    Defendant is the largest grocer in the United States.

40.    Defendant operates the Kroger grocery stores and numerous regional grocery chains such as Ralph's, Roundy's and Mariano's.

41.    Defendant sells numerous private label products under its Private Selection brand.

42.     Plaintiff Valerie Kinman purchased the Product on one or more occasions at defendant's stores, including but not necessarily limited to the location at 2701 Columbus St, Ottawa, IL 61350, between November and December 2020.

43.     Plaintiff bought the Product at or exceeding the above-referenced price because she wanted to buy a product with the qualities and attributes represented and relied upon what the label indicated and/or omitted.

44.     The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

45.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labeling is consistent with its composition.

Class Allegations

46.     The class will consist of all purchasers of the Product who reside in Illinois, Indiana, Ohio and Texas during the applicable statutes of limitations.

47.     Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

48.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

49.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

50.     Plaintiff is an adequate representative because her interests do not conflict with other members.

51.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

52.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

53.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

54.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>("ICFA"), 815 ILCS 505/1, et seq.<br>(Consumer Protection Statutes)</u>

55.    Plaintiff incorporates by reference all preceding paragraphs.

56.    Plaintiff and class members desired to purchase a product with the attributes and omissions as represented by Defendant's labeling and marketing of the Product.

57.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

58.    Defendant misrepresented the Product through statements, omissions, ambiguities and half-truths.

59.    Defendant intended that plaintiff and class members rely on these representations.

60.    Plaintiff and class members were misled and/or deceived.

61.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability<br>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

62.    Plaintiff incorporates by reference all preceding paragraphs.

63.    The Product was manufactured, labeled and warranted to plaintiff and class members that it possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and/or health-related attributes which it did not.

64.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

65.    This duty is based on Defendant's outsized role in the market for this type of product.

66.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and employees.

67.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by regulators and consumers to its main office over the past several years regarding the Product.

68.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because it was not fit to pass in the trade as advertised.

69.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

70.    Plaintiff incorporates by reference all preceding paragraphs.

71.    Defendant had a duty to truthfully represent the Product, which it breached.

72.    This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

73.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

74.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

75.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

76.     Plaintiff incorporates by reference all preceding paragraphs.

77.     Defendant misrepresented and/or omitted the attributes and qualities of the Product.

78.     Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

79.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

80.     Plaintiff incorporates by reference all preceding paragraphs.

81.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the

applicable laws;

4.   Awarding monetary damages, statutory damages pursuant to any statutory claims and

interest pursuant to the common law and other statutory claims;

5.   Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

experts; and

6.   Other and further relief as the Court deems just and proper.

Dated:   February 28, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com