UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VALERIE KINMAN, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 21 C 1154 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| THE KROGER CO., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Feeling defrauded after the purchase of sliced cheese she believed had been smoked over hardwood, plaintiff Valerie Kinman ("Kinman") filed against defendant The Kroger Co. ("Kroger") a first amended complaint asserting claims for violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, breach of express and implied warranties, negligent misrepresentation, common-law fraud and unjust enrichment.[1] Defendant moves to dismiss. For the reasons set forth below, the Court grants in part and denies in part the motion to dismiss.

---

[1] The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2). Plaintiff has alleged that she is a citizen of Illinois while defendant is a citizen of Ohio (the state of its incorporation and its principal place of business). (Am. Complt. ¶¶ 60, 61). Thus, at least one plaintiff is "a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Plaintiff alleges that the amount in controversy exceeds $5,000,000.00. (Am. Complt. ¶ 59). Given plaintiff's allegation that she was damaged by overpaying for a product that costs about $3.99 (Am. Complt. ¶ 57), her allegations as to the amount in controversy plausibly suggest that the purported class includes more than 100 members.

**I.     BACKGROUND**

The following facts are from plaintiff's complaint, and the Court takes them as true.

On more than one occasion in November and December 2020, plaintiff purchased from defendant one of defendant's private label cheese products.  The front of the product was labeled "SMOKED GOUDA" over the words "SLICED CHEESE."  (Am. Comptl. ¶ 1).  Just below those words were the words, "distinctive, smoky flavor."  (Am. Complt. ¶ 1).

Plaintiff alleges that when she purchased the sliced cheese, she "wanted more than a 'smokey' taste but a product that was smoked over hardwood."  (Am. Complt. ¶ 74).  Plaintiff alleges that the front label "does not disclose that all of the Product's smoked flavor is from liquid smoke, prepared by pyrolysis of hardwood sawdust, instead of being smoked over hardwoods."  (Am. Complt. ¶ 33).  Rather, that information is relegated to the back of the label in the ingredient list, which states, "**INGREDIENTS:**  CULTURED PASTEURIZED MILK, SALT, ENZYMES, SMOKE FLAVOR, COLOR ADDED."  (Am. Complt. ¶ 39).  Plaintiff alleges that "'SMOKE FLAVOR' is 'smoke condensed into a liquid form.'"  (Am. Complt. ¶ 40).  Plaintiff alleges that gouda is not the sort of luxury good that, priced cheaply, would make a reasonable consumer check the back label for ingredients.  According to plaintiff, defendant's label gives consumers "the false impression" that the cheese was "smoked over hardwood, when it was not."  (Am. Complt. ¶ 52).

Plaintiff alleges she would not have purchased (or would have paid less for) the product had she known the representations on the label were false and misleading.  Finally, plaintiff alleges that she would purchase the product again in the future "when she can do so with the assurance that [the] Product's representations are consistent with its composition."  (Am. Complt. ¶ 80).

2

Based on these allegations, plaintiff asserts multiple claims. Defendant moves to dismiss.

## II.     STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

3

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, the "circumstances constituting fraud" must be alleged with particularity. Fed.R.Civ.P. 9(b).

### III. DISCUSSION

All of plaintiff's claims are brought under state law, primarily the law of Illinois. As a federal court considering this case under diversity jurisdiction, this Court's job is to predict how the Illinois Supreme Court would decide the issues. *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) ("As a federal court sitting in diversity jurisdiction, our task is to predict how the Illinois Supreme Court would decide issues presented here."); *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) ("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). There being "no federal general common law," this Court, when applying federal cases, will take care to consider which state's law those federal courts are applying. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law."); *Novoselsky v. Brown*, 822 F.3d 342, 352 (7th Cir. 2016) ("our responsibility is to apply Illinois law as it currently exists").

#### A. Plaintiff's claims for breach of warranty

Plaintiff attempts to state claims for breach of express warranty and breach of implied warranty of merchantability, as well as a claim under the Magnusson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. "Express warranties by the seller are created as follows: (a) Any

4

affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313. "Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1). To be merchantable, goods "must be . . . fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2-314(2)(c).

Defendant argues that plaintiff's warranty claims must be dismissed, because plaintiff has not alleged that she provided notice to defendant before filing suit. The Court agrees. Buyers must provide pre-suit notice of a warranty claim. *See* 810 ILCS 5/2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"); *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 492 (Ill. 1996) ("In general, buyers such as the instant plaintiffs must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty.").

"Direct notice is not required when . . . the seller has actual knowledge of the defect of the particular product." *Connick*, 174 Ill.2d at 492. Although plaintiff alleges defendant should have known about the defect due to "complaints by regulators, competitors, and consumers," (Am. Complt. ¶ 103), such generalized knowledge does not suffice. Plaintiff has not alleged *she* provided notice about the particular cheese she purchased. In *Connick*, the Illinois Supreme Court explained that "generalized knowledge" of a product line's problems is not enough to establish actual knowledge of a particular plaintiff's problem with a particular product. *Connick*, 174 Ill.2d at 493. There, the Illinois Supreme Court quoted Judge Learned Hand, who had said:

5

> The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of *buyer's claim* that they constitute a breach.

*Connick*, 174 Ill.2d at 493-94 (quoting *American Mfg. Co. v. United States Shipping Board Emergency Fleet Corp.*, 7 F.2d 565, 566 (2d Cir. 1925)). The Illinois Supreme Court went on to say:

> Thus, even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2-607 is satisfied only where the manufacturer is somehow apprised of the trouble with the *particular product* purchased by *a particular buyer*.

*Connick*, 174 Ill.2d at 494 (emphasis added). The Illinois Supreme Court cited examples of cases where actual knowledge was satisfied because: (1) the "seller hospital removed [the] defective medical device from [the] plaintiff," *Malawy v. Richards Mfg. Co.*, 150 Ill.App.3d 549 (1986); (2) the "seller's employee visited plaintiff 'to get to the bottom of why' the product was malfunctioning," *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill.App.3d 1068 (1982); and (3) the "car was towed to the seller's auto dealership and [the] seller's employees were told that the car needed major repairs," *Overland Bond & Investment Corp. v. Howard*, 9 Ill.App.3d 348 (1972). *Connick*, 174 Ill.2d at 494. The Illinois Supreme Court then affirmed the dismissal of plaintiffs' warranty claims, concluding that the plaintiffs' allegations that defendant knew of safety concerns with and unfavorable reviews of the vehicle did not suffice to allege "actual knowledge of the alleged breach of the particular products purchased by the named plaintiffs in this lawsuit." *Connick*, 174 Ill.2d at 494.

The same is true here. Plaintiff's allegation that defendant should have known about problems due to "complaints by regulators, competitors, and consumers" (Am. Complt. ¶ 103) is merely an allegation of general knowledge of a problem with the product line. That does not suffice under *Connick*. *See Anthony v. Country Life Mfg., LLC*, 70 Fed.Appx. 379, 384 (7th Cir.

6

2003) (affirming dismissal of warranty claims and noting that allegations defendant "knew that its products contained stevia and cholecalciferol [and] therefore knew of the defect" did not suffice to allege actual knowledge) (Illinois law); *Chiappetta v. Kellogg Sales Co.*, Case No. 21-CV-3545, 2022 WL 602505 at *6 ("Contrary to [plaintiff's] contention, she cannot satisfy the pre-suit notice obligation by filing suit. . . . Nor does the allegation that [defendant] received consumer complaints . . . relieve [plaintiff] of her duty to notify [defendant].") (Illinois law).

Thus, the Court agrees with defendant that plaintiff has not alleged that defendant had actual knowledge of the problem with the particular product purchased by her. Plaintiff's claims for breach of express warranty and breach of implied warranty are, thus, dismissed. Because the "Magnusson-Moss Warranty Act incorporates state-law notice requirements," that claim, too, is dismissed. *See Cerretti v. Whole Foods Market Group, Inc.*, Case No. 21 CV 5516, 2022 WL 1062793 at *5 (N.D. Ill April 8, 2022).

The defect is theoretically curable (though perhaps not within the bounds of Rule 11), so Plaintiff's warranty claims are dismissed without prejudice.

   **B.**   **Plaintiff's claim for negligent misrepresentation**

Plaintiff also asserts a claim for negligent misrepresentation. Plaintiff alleges defendant "had a duty to truthfully represent the Product, which it breached." (Am. Complt. ¶ 106).

As defendant points out, plaintiff's claim is barred by the *Moorman* doctrine, i.e., the economic loss doctrine. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 88 (Ill. 1982) ("[T]he UCC provides the proper framework for a purchaser's recovery of economic losses. Allowing an aggrieved party to recover under a negligence theory for solely economic damages would constitute an unwarranted infringement upon the scheme provided by the UCC."). As the Illinois Supreme Court has explained:

7

> The *Moorman* doctrine is intended to preserve the distinction between tort and contract. . . . In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.

*Sienna Court Condominium Assoc. v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1119 (Ill. 2018) (citations omitted). Here, plaintiff seeks relief for disappointed commercial expectations: the sliced cheese she purchased was not smoked over hardwood as she had expected, so she wants her money back. Thus, her claim is barred by the *Moorman* doctrine.

Plaintiff attempts to wedge her claim into an exception to the *Moorman* doctrine by alleging the defendant "hold[s] itself out as having special knowledge and experience." (Am. Complt. ¶ 107). Illinois recognizes an exception to the *Moorman* doctrine for negligent misrepresentation by "one who is in the business of supplying information for the guidance of others in their business transactions." *Moorman*, 91 Ill.2d at 89 (citing *Rozny v. Marnul*, 43 Ill.2d 54 (1969)). It applies to some intangible services, such as accounting services. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 163-64 (Ill. 1994). The exception does not, however, apply to information provided by a purveyor of tangible products. Thus, an allegation that a supplier of tangible goods provided information ancillary to the sale of a product does not suffice to bring a claim within the exception to the *Moorman* doctrine. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 339 (Ill. 2006) (the "focus [of the negligent misrepresentation exception to the economic loss doctrine] must be on whether the defendant is in the business of supplying *information* as opposed to providing something tangible. . . . In short, the negligent misrepresentation exception to the *Moorman* doctrine is not applicable if the information supplied is merely ancillary to the sale of a product.") (citing *Fireman's Fund Ins. Co. v. SEC Donahue, Inc.*, 176 Ill.2d 160, 168-69 (Ill. 1997)).

For these reasons, plaintiff's claim for negligent misrepresentation is barred by the *Moorman* doctrine. *See also Cerretti*, Case No. 21 CV 5516, 2022 WL 1062793 at *7 & n. 13 (Illinois law); *Chiappetta,* Case No. 21-CV-3545, 2022 WL 602505 at *8 (Illinois law) (citing *Manley v. Hain Celestial Group, Inc.*, 417 F. Supp.3d 1114, 1120 (N.D. Ill. 2019)). Amendment would be futile, so the claim is dismissed with prejudice.

### C. Plaintiff's ICFA unjust enrichment claims

Plaintiff asserts that defendant violated the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1 et seq. To state a claim, plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180 (Ill. 2005).

Plaintiff's ICFA claim is based on the wording of the label. According to plaintiff's allegations, the label read:

# SMOKED GOUDA
## SLICED CHEESE
--
distinctive, smoky flavor

(Am. Complt. ¶ 1).

Plaintiff argues defendant "fail[ed] to disclose the Product was not smoked." (Plf. Brief at 4/Docket 23 at 4). Specifically, plaintiff argues:

> Defendant's identification of the Product as "Smoked Gouda" is, at best, only true with respect to the taste of the cheese. Without the required qualifications, it conveys the false message that the Product was smoked over hardwood[.]

9

(Plf. Brief at 5-6/Docket 23 at 5-6). Plaintiff argues that the "absence of the qualifying term 'added smoke flavor' is misleading." (Plf. Brief at 6/Docket 23 at 6). Thus, plaintiff is not arguing that the label contains an affirmative misrepresentation (she admits it is true with respect to taste). Rather, plaintiff's claim is based on an omission.

Omissions can be actionable under the ICFA. The ICFA includes in the definition of deceptive act or practice a "false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2. Thus, a material omission, like a misrepresentation, is actionable under the ICFA. An omission is material "where a buyer would have acted differently knowing the information." *Connick*, 174 Ill.2d at 505. In *Connick*, where plaintiff had alleged defendant failed to disclose safety problems of which it was aware, the Illinois Supreme Court concluded that the omission was material because plaintiff "would not have purchased the vehicles if [defendant] had disclosed the [product's] safety risk." *Connick*, 174 Ill.2d 505. In this case, plaintiff has alleged she would not have purchased the sliced cheese had she known it was not smoked over hardwood, so she has adequately alleged that such an omission was material to her.

Although the plaintiff in this case has alleged that the ingredient list on the back of the package accurately listed "SMOKE FLAVOR" as an ingredient, that admission does not doom plaintiff's claim. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) ("an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers"). As the Seventh Circuit has explained, consumer fraud statutes such as the ICFA require "plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers," i.e., "that a significant portion of the general consuming

10

public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Bell*, 982 F.3d at 474-75 (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972-73 (7th Cir. 2020)). In *Bell*, the Seventh Circuit was interpreting the consumer-fraud laws of ten states, which laws the Seventh Circuit described as being "interpreted for the most part interchangeably," noting the parties had "not identified any differences relevant" to that case. *Bell*, 982 F.3d at 475. The ICFA was among the state laws the Seventh Circuit interpreted in *Bell*. *Bell*, 953 F.3d at 475, n. 1.

In *Bell*, the Seventh Circuit said a plaintiff's claim survives a motion to dismiss "if [she has] plausibly alleged that the [defendant's] front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Bell*, 982 F.3d at 476. In *Bell*, the Seventh Circuit concluded that the plaintiffs had stated a claim for consumer fraud with respect to a label that read "100% Grated Parmesan Cheese" on a product that contained 4-9% cellulose powder (to prevent caking) and potassium sorbate (to prevent mold), even though the back of the label accurately reflected those ingredients. Those plaintiffs had alleged they had "conducted consumer surveys showing that 85 to 95 percent of consumers understood '100% Grated Parmesan Cheese' to mean that the product contains only cheese, without additives[.]" *Bell*, 982 F.3d at 480.

On the other hand, it "is well settled that a label is not deceptive as a matter of law when the plaintiff's interpretation is so facially illogical, implausible, or fanciful that no reasonable consumer would think it—and that dismissal is warranted in those circumstances." *Bell*, 982 F.3d at 493 (Kanne, J., concurring) (collecting cases). In this case, the Court cannot say plaintiff's interpretation of the label is fanciful, illogical or implausible.

11

Plaintiff has alleged that the front of the package of cheese slices contained the phrase, "SMOKED GOUDA." Plaintiff took this to mean that the cheese slices were smoked over hardwood. That is not an inherently fanciful or unreasonable interpretation, because the word 'smoked' has at least two meanings, one of which is the meaning plaintiff gave it. Specifically, one meaning of the word 'smoked' is *cured over burning wood*. That, of course, is not the only meaning. The word is also an adjective that describes a flavor. As Judge Aspen recently explained (in denying a motion to dismiss a claim under the ICFA):

> The front of the Product bears the phrase "Smoked almonds," in red packaging that [plaintiff] alleges is 'evocative of fire.' [Plaintiff] claims that she interpreted the phrase 'smoked' to mean that the Product was smoked over an open fire. This is not an unreasonable or fanciful interpretation. Although the term 'smoked' may be used to describe a flavor, as [defendant] suggests, it can also be used to describe a process. ("Dried or cured by exposure to smoke; impregnated with smoke"). And nothing on the front of the Product's label would suggest to consumers that the term 'smoked' refers to the Product's flavoring, as opposed to the process by which the Product was produced.

*Rudy v. Family Dollar Stores, Inc.*, __ F. Supp.3d __, __, 2022 WL 345081 at *4 (N.D. Ill. Feb. 4, 2022) (internal citations omitted); *see also Bynum v. Family Dollar Stores, Inc.*, __ F. Supp.3d __, __, Case No. 20-cv-6878, 2022 WL 837089 at *4 (S.D. N.Y. March 21, 2022) ("[T]he description 'Smoked" is susceptible to multiple interpretations. . . . [T]he label could be interpreted to mean the almonds were subject to at least some smoking. However, the term smoked could also be interpreted by a reasonable consumer to indicate the flavoring of the nuts."). The phrase is ambiguous, so it is not unreasonable as a matter of law for the plaintiff to interpret "SMOKED GOUDA" as meaning smoked over hardwood.

Of course, this case is different from *Rudy*, because the label at issue here also mentions the "distinctive, smoky flavor." That phrase, though, does not necessarily provide clarity to a consumer, because it, too, could be interpreted in more than one way. It could mean the cheese

has a "distinctive, smoky flavor" resulting from the process of smoking over hardwood, or it could mean the cheese has a "distinctive, smoky flavor" resulting from the addition of smoke flavoring. If the front label had instead stated something like "smoke flavored," "smoke flavoring," or "smoke flavor added," then it would have been clear that the statement "SMOKED GOUDA" did not mean the cheese was cured over burning hardwood. Given the Seventh Circuit's holding in *Bell*, plaintiff has, by alleging she was confused by an ambiguous front label, stated a claim under the ICFA, despite her admission that the ingredient list resolved the ambiguity. Plaintiff is "entitled to present evidence on how consumers actually understand the labels." *Bell*, 982 F.3d at 480.[2]

Whether plaintiff can prove a claim under the ICFA is a question for another day. Defendant's motion to dismiss the ICFA claim is denied.[3]

Relatedly, defendant seeks to dismiss plaintiff's claim for unjust enrichment. The Seventh Circuit has held that, where a party fails to state a claim under the ICFA, she necessarily

---

[2] Defendant does not argue that *Bell* is distinguishable because it involved an affirmative misstatement, as opposed to an omission, or that a truthful ingredient list cures an omission as a matter of law.

[3] Because the Court dismissed the warranty claims for lack of pre-suit notice, it need not consider whether those counts state a claim; but they do not. Plaintiff does not state a claim for breach of the implied warranty of merchantability, because plaintiff does not allege the cheese was unfit for consumption. 810 ILCS 5/2-314(2)(c) (to be merchantable, goods "must be . . . fit for the ordinary purposes for which such goods are used."). Plaintiff does not state a claim for breach of express warranty, because she alleges an omission rather than an affirmative promise. 810 ILCS 5/2-313 ("Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."). Plaintiff does not (and cannot) allege the label promised the sliced cheese had been smoked over hardwood. As the Court explained above (and as other courts have noted) the word smoked has more than one meaning, so its inclusion cannot be a promise that the cheese was smoked over hardwood when it can as easily mean the cheese has merely a smoked flavor. (Plaintiff admits as much in her brief.) Because plaintiff has not stated a claim based on a contract, the Court need not consider defendant's argument that plaintiff's consumer-fraud claim fails to allege more than her contract-based claim.

fails to state a claim for unjust enrichment. *Toulon v. Continental Casualty Co.*, 877 F.3d 725, 741-42 (7th Cir. 2017) ("We agree with the district court that [plaintiff] failed to state a claim for unjust enrichment because she failed to state a claim for fraud or for violation of the ICFA."). Because the Court did not dismiss the ICFA claim, it will not dismiss the unjust enrichment claim.

###### D. Plaintiff's claim for fraud

Plaintiff also asserts a claim for common-law fraud. Under Illinois law, the elements of common-law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick*, 174 Ill.2d at 496 (emphasis added). Fraud, pursuant to Rule 9(b), must be alleged with particularity, which means "describing the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

Defendant moves to dismiss, arguing that plaintiff has failed to allege sufficiently that defendant intended the statement to induce plaintiff to act. In her complaint, plaintiff alleges defendant's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (Am. Complt. ¶ 112). Pursuant to Rule 9(b), intent and knowledge "may be alleged generally." They may not, however, be alleged conclusorily. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"); *see also Chiappetta*, Case No. 21-cv-3545, 2022 WL 602505 at *8 (dismissing common-law fraud claim because

14

allegations of fraudulent intent were conclusory) (Illinois law); *Rudy*, __ F. Supp.3d at __, 2022 WL 345081 at *9 (dismissing common-law fraud claim, because plaintiff's allegation—that defendant's fraudulent intent "was evinced by its knowledge that the Product was not consistent with its representations—was conclusory) (Illinois law). Here, too, plaintiff's allegations of intent are conclusory.

Plaintiff's claim for fraud is dismissed without prejudice for failure to state a claim.

E.  **Plaintiff's demand for injunctive relief**

Defendant argues that plaintiff's demand for injunctive relief should be dismissed, because plaintiff lacks standing to seek that form of relief.

The Constitution limits a federal court's jurisdiction to cases and controversies, and "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016). A plaintiff must establish standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Here, at the pleadings stage, allegations will suffice.

A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 185 (2000). "To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 & 161 (2014) ("An allegation of *future* injury may suffice if the

15

threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur[.]") (citations omitted).

Plaintiff argues that she has sufficiently alleged a risk of future harm by alleging she would purchase the product again in the future "when she can do so with the assurance that Product's representations are consistent with its composition." (Am. Complt. ¶ 80). The Court disagrees. Plaintiff's allegation is speculative. *See Camasta*, 761 F.3d at 741 ("Since [plaintiff] is now aware of [defendant's] sales practices, he is not likely to be harmed by the practices in the future. Without more than the speculative claim that he will again be harmed by [defendant], plaintiff is not entitled to injunctive relief."); *Chiappetta*, 2022 WL 602505 at *10 ("[Plaintiff] knows that the Product's filling contains apples and pears in addition to strawberries; therefore, she is unlikely to be harmed by [defendant's] Product packaging in the future."); *Elder v. Bimbo Bakeries USA, Inc.*, Case No. 3:21-cv-637-DWD, 2022 WL 816631 at *3 (S.D. Ill. March 17, 2022) ("[N]ow that [plaintiff] is aware of the deception, it is unlikely [she] will be duped again. . . . [M]erely purchasing the cake does not trigger [plaintiff's] injury. Her injury lies in purchasing the cake under the influence of a deceptive label. There is no chance she will be tricked again[.]"). Now that plaintiff is aware of the alleged omission, she, like the plaintiff in *Camasta*, is unlikely to purchase the cheese again.

Plaintiff's demand for injunctive relief is dismissed for lack of standing.

F. **Plaintiff's claims under other states' consumer fraud statutes**

In her complaint, plaintiff asserts that defendant's conduct also violated the consumer-fraud statutes of states other than Illinois. In her amended complaint, plaintiff states that she seeks to represent a class of persons who purchased the sliced cheese in the states of Arkansas, Iowa, Indiana, Ohio and Texas.

16

Defendant argues that plaintiff lacks standing to pursue claims under the statutes of those other states, because she has not alleged that she personally purchased the product in those states. The Court disagrees. Article III standing requires a redressable injury, and plaintiff has one in the form of overpayment for the product. Article III standing is a question different from the statutory question of whether a "legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-127 (2014). Defendant's request that the Court dismiss these claims for lack of standing is denied.[4] Defendant does not argue that the plaintiff fails to state a claim under those statutes.

## IV. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendant's motion [21] to dismiss. Plaintiff's claims for breach of express warranty, breach of implied warranty and breach of warranty under Magnusson Moss are dismissed without prejudice. Plaintiff's claim for negligent misrepresentation is dismissed with prejudice. Plaintiff's common-law fraud claim is dismissed without prejudice. Plaintiff's demand for injunctive relief is dismissed without prejudice for lack of standing. If plaintiff would like to file a second amended complaint, she is given leave to do so by June 28, 2022. If plaintiff files an amended

---

[4] Plaintiff might do well to consider whether these claims are worth pursuing. To defendant's point, the Illinois Consumer Fraud Act, for example, does not apply "to fraudulent transactions which take place outside Illinois." *Avery v. State Farm Auto. Ins. Co.*, 216 Ill.2d 100, 185 (Ill. 2005). Thus, a plaintiff who purchased a product outside of Illinois, having no claim under the ICFA herself, would not be an adequate representative of a class who purchased the product in Illinois. To the extent the other states' consumer-fraud laws are similarly restricted to transactions within those states, plaintiff is unlikely to be an adequate representative of class members who purchased the product in the respective states. Nor is she likely to become an adequate representative by purchasing the cheese in those other states, because then defendant would likely pursue a defense unique to plaintiff, i.e., that she, unlike other class members, already knew the cheese was not smoked over hardwood. Furthermore, this Court is unlikely to grant a fee petition with respect to class counsel's time spent on claims that fail for such reasons.

complaint, defendant's deadline to answer or otherwise plead is July 28, 2022. If plaintiff does not file an amended complaint, defendant's deadline to answer is July 14, 2022.

SO ORDERED.                             ENTERED: May 27, 2022



_____
JORGE L. ALONSO
United States District Judge