UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Valerie Kinman, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　- against -<br><br>The Kroger Co.,<br><br>　　　　　　　　　Defendant | 1:21-cv-01154<br><br>Second Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Valerie Kinman ("Plaintiff") alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. The Kroger Co. ("Defendant") manufactures, labels, markets, and sells slices of Gouda cheese purporting to get its smoked attributes – including taste and color – entirely from being smoked, under its Private Selection brand ("Product").

 

## I. SMOKING PROCESS

2. Smoking is a processing method to preserve or improve the flavor of food by exposing it to smoke, usually from burning wood.

1

3. The drying action of the smoke and the different phenol compounds helps to preserve protein-rich foods such as meat, cheese, almonds, and fish.

4. The origins of smoking date to prehistory, as nomadic peoples experimented with fire and primitive cheese products.

5. The earliest record of smoked cheese comes from ancient Rome, when an owner of a cheese shop was forced to share space in the *macellum* with a baker.[1]

6. The baker's wood burning fire imparted a distinct flavor to the cheese, which varied based on the type of wood that was used.

7. For example, wood chips from deciduous hardwood trees of the genus *Carya* – provide hearty and sweet flavors to cheese and meat ("hickory").

8. Pecan wood, a type of hickory, gives cheese a spicy and nutty taste.

9. Oak provides smoked flavors of moderate intensity.

10. During the second half of the 20th century, the popularity of smoking decreased due to the prevalence of "smoke flavor," which is smoke condensed into a liquid form.[2]

11. While "smoke flavor" may be convenient, it fails to supply the rich, layered combination of phenols and other odor-active compounds compared to where a food's taste is derived entirely from being smoked over wood.

12. In the past two decades, consumers have increasingly embraced smoked foods, as made without advanced chemistry and synthetic additives.

13. Cheese industry observers confirm that "smoked cheeses are on the rise," as

---

[1] *Macellum* is the Italian name for the farmer's markets of ancient Roman that sold freshly made foods.
[2] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, Jun 15, 2016.

2

"[P]eople are seeking bigger flavors, bolder flavors, deeper flavors."[3]

## II. CONSUMERS VALUE FOODS WITHOUT ADDED FLAVORING

14. According to research by Mintel, consumers are increasingly seeking foods that get their taste only from a characterizing ingredient or a natural processing method.

15. Mintel reports that consumers are increasingly aware of the lack of transparency in the flavor industry, regularly highlighted by non-profits such as the Environmental Working Group ("EWG").[4]

16. The EWG often identifies foods with "natural" flavors, but which also contain "incidental" additives such as emulsifiers and solvents, which may pose health or nutritive risks.

17. The European Food Safety Authority ("EFSA") reported that many smoke flavorings added to foods contain compounds at levels which may pose a toxic risk when consumed.[5]

18. Innova Market Insights posited that "no added flavor" may be an emerging consumer trend.[6]

19. This trend is unique because it is not based on an affirmative statement or "claim," but by the absence of a front label statement which is required to inform consumers that a food's taste comes, at least in part, from something *added*.

## III. STATE AND FEDERAL REGULATIONS REQUIRE ADDED SMOKED FLAVOR TO BE DISCLOSED ON FRONT LABEL TO CONSUMERS

20. Federal labeling regulations, which have been adopted by this State, require that a

---

[3] Kimberly L. Jackson, Smoked cheese: Growth stoked by demand for bolder flavors, Newark Star-Ledger, Dec 30, 2014, Updated Mar 29, 2019.

[4] Lynn Dornblaser, Director, Innovation & Insight, Mintel, Clean Label: Why this trend is important now, 2017.

[5] Faizah Ahmed, Smoke-Flavored Foods May Be Toxic, Food Safety News, Feb. 16, 2010.
By on February 16, 2010

[6] Innova Market Insights, Flavors: Trends and Sustainability, Sept. 2018.

food's front label disclose the source of any characterizing or main flavor. 21 C.F.R. § 101.22(i).[7]

21. According to one commentator, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two. This consumer protection objective is relevant to taste claims conveyed in advertising as well."[8]

22. Federal and state regulations require that:

> (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

21 C.F.R. § 101.22(i)(1)(i).

23. The FDA has warned companies that fail to accurately inform consumers of foods which are not smoked but only have added smoke flavor:

> If these smoke ingredients [natural smoke flavor] are added flavors, they should be declared in accordance with 21 CFR 101.22 [on the front of the label]; however, if these ingredients describe the smoking process, then they must not be listed as ingredients in the ingredient statement.[9]

24. When the FDA enacted the regulations for flavoring, they considered it misleading to describe a food as "smoked" when "true smoke is absorbed in a liquid or other medium, and that medium is added to a food to provide a smoke flavor." 38 Fed. Reg. 20721.

25. In this circumstance, the front label should state, "with added smoke flavor," "[with]

---

[7] Illinois has adopted regulations identical to those set out by the Federal Food Drug and Cosmetic Act and its accompanying regulations. *See* 410 ILCS 620/1 *et seq*.; 410 ILCS 620/21(j).
[8] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.
[9] FDA Warning Letter, Smoked Seafood, Inc. dba Little Mermaid Smokehouse, MARCS-CMS 515739 — JUNE 27, 2017.

4

natural smoke flavor" or "flavor added."

26. The addition of smoke flavor to cheese was considered significant enough to warrant a specific regulation, entitled, "Spiced, flavored standardized cheeses." 21 C.F.R. § 133.193. Gouda cheese

27. Since Gouda is a standardized cheese, the addition of flavoring requires that its name "shall include in addition to the varietal name of the natural cheese, a declaration of any flavor and/or spice that characterizes the food, in the manner prescribed in § 101.22 of this chapter." 21 C.F.R. § 133.193(b); 21 C.F.R. § 133.142 ("Gouda cheese.").

### IV. DEFENDANT'S LABELING IS MISLEADING

28. Defendant's deceptive representation of the Product's taste and flavor violates 21 U.S.C. § 343, including 21 U.S.C. § 343(a)(1), which deems a food misbranded when the label contains a statement that is "false or misleading in any particular."

29. This State has adopted and incorporated the Federal Food Drug and Cosmetic Act ("FFDCA") and its accompanying regulations. *See* 410 ILCS 620/1 *et seq*.

30. Thus, a violation of federal food labeling laws is an independent violation of each State's laws and actionable as such.

31. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

32. Whether a food has not been subject to any smoking, or merely to some smoking,

5

the addition of "liquid smoke flavoring" to "enhance" or create any smoked taste is basic front label information consumers rely on when making quick purchasing decisions at the grocery store. 21 C.F.R. § 101.22(i).

33. The Product is labeled as "Smoked Gouda," and described as having a "distinctive, smoky flavor."

34. The front label does not disclose that all the Product's smoked flavor is from liquid smoke, prepared by pyrolysis of hardwood sawdust, instead of being smoked over hardwoods.

35. Gouda cheese that gets its smoked taste exclusively or even mostly from being smoked is not a rare or pricy delicacy that would make a reasonable consumer "double check" the absence of added smoke flavor by scouring the label.

36. Gouda cheese with a smoked taste only from smoking exists in the marketplace and is not technologically or otherwise unfeasible to produce.

37. These products (below), i.e., "Smoked Gouda" and "Hickory-Smoked Gouda Cheese Slices," are labeled identically to Defendant's smoked Gouda, yet Defendant's has added smoke flavor, while these get their flavor entirely from being smoked over hardwoods.

 

38. The result is that consumers are misled by products that appear identical, even though Defendant's Product is not equal in quality to those without added smoke flavor.

39. Where Gouda cheese (1) may have undergone *some* smoking but has a stronger and enhanced smoke taste from added smoke flavor or (2) like here, has not been subject to any smoking and gets all its smoked taste from added smoke flavoring, almost all companies – but not Defendant – truthfully represent this by a front label disclaimer, "with Natural Smoke Flavor."

7

Smokehouse Gouda – Gouda Natural Cheese

with **Natural Smoke Flavor**



40. Unlike the competitor product above, Defendant's Product fails to disclose the addition of smoke flavor on the front and relegates this information to the ingredient list.

> **INGREDIENTS:** CULTURED PASTEURIZED MILK, SALT, ENZYMES, SMOKE FLAVOR, COLOR ADDED.

41. "SMOKE FLAVOR" is "smoke condensed into a liquid form."[10]

42. Consumers are misled because the absence of required, qualifying terms, i.e., "natural smoke flavored Gouda," "smoke flavored Gouda," or "Gouda with natural [added] smoke flavor," gives them the false impression that all the Product's smoked attributes – including taste

---

[10] Matthew Sedacca, Liquid Smoke: The History Behind a Divisive Culinary Shortcut – Barbecue's love/hate relationship with the manufactured flavor, Eater.com, Jun 15, 2016.

8

and color – are imparted by smoking, when none of these attributes are. 21 C.F.R. § 101.22(i)(1)(i).

43. The added smoke flavor further misleads consumers by darkening the Product, giving the impression it was smoked longer than it was.

44. Even consumers who are distrustful enough of a nationally recognized brand like Kroger and "double check" the ingredients to see "smoke flavor" will not be told that the Product is not smoked.

45. The 400 flavor compounds which contribute to a "smoked taste" include pyrazines, aromatic hydrocarbons, alcohols, organic acids, esters, furans, phenols, carbonyl and noncarbonyl compounds, and various oxygen- and nitrogen-containing heterocyclic compounds.

46. Added smoke flavor cannot impart the same taste of real smoking for several reasons.

47. First, added smoke flavoring lacks the delicate balance of phenolic compounds, including 2,3-Butanedione, 2,3-Pentanedione, 3-Butanoic acid, 3-Methylbutanoic acid, 4-Ethylguaiacol, 4-Propylguaiacol and/or 4-Vinylguaiacol.

48. Second, the smoke generation process influences the wood-smoke chemical composition, generating compounds that are not capable of being included in a "natural smoke flavor," like trans-isceugenol and 4-methylsyringol.

49. When foods like Gouda cheese are exposed to volatiles and particulate matter found in smoke, they undergo chemical reactions which form new flavor compounds.

50. Third, certain compounds only serve as intermediates in the formation of more stable forms of compounds which are essential to the aroma of smoke.

51. Fourth, in most systems involving only smoke generation instead of smoking food, there is only a focus on volatile compounds which are believed to have distinctive odor properties at low concentrations.

52. This overlooks that nonvolatile compounds significantly contribute to smoke flavor.

53. By failing to disclose the addition of smoke flavor, consumers get the false impression the Product was made similarly to comparably labeled products and smoked over hardwood, when it was not.

## V. CONCLUSION

54. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

55. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

56. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

57. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

58. The Product is sold for a price premium compared to other similar products, no less than $3.99 per 10 slices (8 oz), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

### Jurisdiction and Venue

59. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

60. The aggregate amount in controversy exceeds $5 million, including any statutory, punitive or other damages, exclusive of interest and costs.

61. Plaintiff is a citizen of Illinois.

62. Defendant The Kroger Co. is an Ohio corporation with a principal place of business in Cincinnati, Hamilton County, Ohio.

63. Minimal diversity is satisfied because Plaintiff and Defendant are citizens of different states.

64. Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District.

## Parties

65. Plaintiff is a citizen of Ottawa, LaSalle County, Illinois.

66. Plaintiff bought the Product at Kroger, 2701 Columbus St, Ottawa, IL 61350, between November 2020 and December 2020, among other times.

67. Defendant The Kroger Co. is an Ohio corporation with a principal place of business in Cincinnati, Ohio, Hamilton County.

68. Defendant is the largest grocer in the United States.

69. Defendant operates the Kroger grocery stores and numerous grocery chains such as Roundy's and Mariano's.

70. Defendant is known for selling the highest quality goods under its private label brands, sold at all the grocery stores it owns.

71. These items are equivalent to, and usually exceed, their national brand competitors in quality.

72. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at Defendant's stores, between September 2019 and July 2022, among other times.

73. Plaintiff saw the front label that said, "Smoked Gouda," "distinctive, smoky flavor,"

11

and noticed there was no mention of added smoke flavor.

74. Plaintiff expected that any smoke taste and flavor – and other smoked attributes, such as a "smoked," darker, color – was entirely from being smoked over fire and hardwood.

75. Plaintiff had no reason to know the Product was not subject to any smoking.

76. Plaintiff wanted more than a "smokey" taste but a product that was smoked over hardwood, so that its taste and color did not need so much, or any, added "smoke flavor."

77. Plaintiff bought the Product at or exceeding the above-referenced price.

78. Plaintiff relied on the representations identified here.

79. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

80. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

81. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## Class Allegations

82. Plaintiff seeks certification under Fed. R. Civ. P. 23 of a Class defined as:[11]

> All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

83. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and the Class are entitled to damages.

---

[11] The proposed class is defined in accordance with law to exclude, among other persons, any officers, directors, employees of Defendant and its subsidiaries, and Court officials where applicable.

84. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

85. Plaintiff is an adequate representatives because her interests do not conflict with other members.

86. No individual inquiry is necessary since the focus is only on Defendant's practices and the Class is definable and ascertainable.

87. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

88. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect Class members' interests adequately and fairly.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

(On Behalf of the Illinois Class)

89. Plaintiff incorporates by reference all preceding paragraphs.

90. Plaintiff desired to purchase a product which was subject to at least some smoking to provide its smoked taste, instead of only having added smoked flavor.

91. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

92. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

93. Plaintiff and the Class relied on the representations.

94. Plaintiff and the Class would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

95. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and the Class, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative for the Class and the undersigned as counsel for the Class;

2. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: August 11, 2022

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

Patrick D. Austermuehle
Peter S. Lubin
Lubin Austermehle, P.C.
17W220 22nd St #410
Oakbrook Terrace IL 60181
Tel: (630) 333-0333
patrick@l-a.law
peter@l-a.law